BRENDA PERKINSON et al., Plaintiffs-Appellants, v. MONTY MANION et al., Defendants-Appellees.—BRENDA PERKINSON et al., Plaintiffs-Appellees, v. MONTY MANION et al., Defendants-Appellants.

Fifth District   Nos. 5—86—0628, 5—86—0685 cons.

Opinion filed December 2, 1987.

Beth Elaine Walston and Richard P. Shaikewitz, both of Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Hale, P.C., of Alton, for Brenda Perkinson, Elizabeth Perkinson, and Alex Perkinson.

Russell K. Scott and Edward L. Adelman, both of Dunham, Boman & Leskera, of East St. Louis, for Reelfoot Packing Company.

Madelyn J. Lamb, of Burroughs, Simpson, Hepler & Broom, of Edwardsville, for Interstate Producers Livestock Association.

JUSTICE WELCH delivered the opinion of the court:

The plaintiffs in this personal injury and wrongful death action are Brenda Perkinson, Elizabeth Perkinson, a minor, by her father and next friend Alex Perkinson, and Alex Perkinson as administrator of the estate of Ethel Perkinson. The defendants are Monty Manion (Manion), Reelfoot Packing Company, a division of Valley Dale Packers (Reelfoot), Interstate Producers Livestock Association (the Association), and Jack Scoville, doing business as Scoville's Tap Room (Scoville's). Plaintiffs appeal from the partial summary judgment of the circuit court of Madison County in favor of the Association. Reelfoot appeals from the circuit court's refusal of summary judgment in Reelfoot's favor. Scoville's and Manion are not parties to these interlocutory appeals, which this court consolidated for oral argument and opinion.

Plaintiffs' most recent complaint alleged Brenda, Elizabeth and Ethel Perkinson were passengers in a motor vehicle which collided with a tractor-trailer rig owned and driven by Manion. Manion had no liability insurance on the tractor-trailer at the time of the collision. Manion's trip originated when he left his home and drove to Scoville's in National City. There, he telephoned Reelfoot, as was his custom, to inform Reelfoot purchasing agent Charles Nolan that he was in the area and to inquire whether any work was available. Nolan told Manion to telephone the Association for the location of a load to be transported to Reelfoot's plant. An employee of the Association at the Association's main office in Peoria told Manion the load was at the Association's Bluffs, Illinois, facility. Manion was en route to Bluffs to pick up the hogs when the collision occurred.

In the counts in question in plaintiffs' appeal, plaintiffs alleged that at the time of the collision (1) Manion was the agent, employee or servant of the Association; (2) the Association was involved in a joint venture with Reelfoot; and (3) the Association violated Interstate Commerce Commission rules and regulations requiring minimum levels of liability insurance. It was upon these allegations that the circuit court entered summary judgment in favor of the Association. In the counts in question in Reelfoot's appeal, plaintiffs alleged Manion was Reelfoot's agent. The circuit court denied Reelfoot's motion for sum-

mary judgment upon those counts.

The motions for summary judgment were submitted to the circuit court on the basis of the depositions of Manion, Nolan and Association employee Max Salmon. The pertinent facts are not in dispute in light of that testimony. The Association dispatched loads from various locations. Manion was not told the destination of the hogs on this occasion but knew it would be Reelfoot's facility in Union City, Tennessee. Manion made one or two hauls a week to Reelfoot's plant for Reelfoot. On occasion Manion also brought loads to the Reelfoot facility when a hog seller hired Manion instead of Reelfoot. On those occasions the seller paid Manion and billed Reelfoot for the hogs, the seller's commission and shipping. After the accident Reelfoot no longer used Manion, but sellers of hogs continued to use Manion to transport loads to Reelfoot's plant. Reelfoot received all its incoming hogs by tractor-trailer or truck but owned no livestock transport vehicles of its own. Reelfoot received about 10 to 15 trailer loads of hogs each day from various sellers located up to an 18-hour drive from the Reelfoot plant. Reelfoot bought an average of three or four loads a week from the Association. Reelfoot reserved the right to reject deliveries of nonconforming livestock. Reelfoot paid Manion by check after delivery according to the weight of the hogs hauled. Manion had hauled for Reelfoot for about a year to a year and a half at the time of the accident. Manion also hauled for other firms. Reelfoot had at its office a copy of a policy of cargo insurance issued for Manion, provided by Hartford Insurance to Reelfoot. Reelfoot's policy was that Reelfoot and the driver each bore half the risk of the first dead hog, and thereafter dead hogs were the driver's responsibility. When Manion first sought work from Reelfoot, Nolan told him Reelfoot needed a copy of Manion's cargo insurance on file before Reelfoot could use him. The only business name on Manion's tractor-trailer was Manion's. Manion bought his own fuel and permits and did not maintain a log for Reelfoot. Reelfoot instructed Manion as to the day and time the hogs were to be delivered. The Association was an agricultural cooperative which bought hogs from farmers and sold the hogs to slaughterhouses. The Association maintained 32 stockyards in Illinois. The Association bought hogs from farmers and sold to buyers, including Reelfoot. On this particular occasion the buyer-seller agreement required Reelfoot to arrange transportation, and the Association had no control over whom Reelfoot retained to transport the hogs. This was not always the case; when the agreement with Reelfoot or some other buyer called for the Association to arrange transportation, the Association obtained a tractor-trailer and driver, but the Association did not use

Manion. The business relationship between Reelfoot and the Association was of more than 25 years' duration.

■■■ We first consider plaintiffs' appeal. The first issue is whether the trial court correctly determined Manion was not an agent of the Association as a matter of law. Summary judgment should be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused his injury. An exception is the doctrine of *respondeat superior*. (See *Metzler v. Layton* (1939), 373 Ill. 88, 91, 25 N.E.2d 60, 61.) Whether the relationship of principal and agent or owner and independent contractor exists is a question of fact for the jury unless the relationship is so clear as to be indisputable. *Yuhas v. Allis-Chalmers Distributing Service Corp.* (1973), 12 Ill. App. 3d 814, 821, 299 N.E.2d 166, 170.

■■■ The existence of either relationship depends upon such facts as the matter of hiring, right to discharge, manner and direction of servants, right to terminate the relationship and the character of the supervision of the work done. Unless those facts clearly appear, the question of existence of the relationship cannot be one of law. (*Tansey v. Robinson* (1960), 24 Ill. App. 2d 227, 234, 164 N.E.2d 272, 275.) An independent contractor has been defined as one who renders service in the course of an occupation and represents the will of the person for whom the work is done only with respect to the result and not the means by which that result is accomplished. It has also been said that if the person for whom the service is rendered retains the right to control the details of the work and the method or manner of its performance, the relationship of employee and employer exists. The right to control the manner of doing the work is an important if not the principal consideration which determines whether the worker is an employee or an independent contractor. (*Trzaska v. Bigane* (1945), 325 Ill. App. 2d 528, 535, 60 N.E.2d 264, 267.) In this case it is undisputed that it was Reelfoot, not the Association, which hired Manion. The Association had no control over whom Reelfoot sent to take possession of the hogs and had no authority to tell Manion how to do the job or to refuse to deal with him. In *Cable v. Perkins* (1984), 121 Ill. App. 3d 127, 459 N.E.2d 275, the appellate court concluded a newspaper delivery driver was an independent contractor as a matter of law though the company had a written contract with the deliverer, paid the deliverer a rate based on the number of customers and the mile-

age, handled complaints against the deliverer and could terminate the relationship. In *Cable* the appellate court relied on the similar case of *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045, which also involved a newspaper deliverer and in which the court also held the deliverer was an independent contractor as a matter of law. In *Trzaska v. Bigane*, the appellate court concluded a coal delivery driver the owner had used for 20 years was an independent contractor as a matter of law though the driver's vehicle bore the coal business' sign and the driver regularly hauled for the business and collected its money. There is no more relevant connection between Manion and the Association in the instant case than was present in *Cable, Manahan* and *Trzaska*. There is no more question of fact that Manion was an agent of the Association than was present in those cases. We conclude the trial court properly held Manion was not the Association's agent under the instant facts.

■■ ■ We turn to plaintiffs' contention that the Association and Reelfoot were engaged in a joint venture at the time of the accident. A joint venture is an association of two or more entities to carry out a single enterprise for profit. There must be a community of interest in the performance of the common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy, and a right to joint control. (*Swap Shop, Inc. v. M & R Amusement Corp.* (1981), 102 Ill. App. 3d 926, 931, 430 N.E.2d 499, 503.) Despite the long period of trade between Reelfoot and the Association, the uncontradicted evidence establishes no more than a buyer-seller relationship. There was no joint interest in the subject matter. Regardless of when ownership of a livestock shipment transferred, at that point the Association's ownership ceased and Reelfoot's ownership commenced. That the two communicated with each other and the drivers in a form of shorthand is attributable to the duration and volume of trade between this buyer and seller and other buyers and sellers in the industry. The trial judge correctly determined no joint venture existed as a matter of law on these facts.

Plaintiffs argue a question of fact existed as to whether the Association was liable under interstate commerce regulations imposing liability for failure to maintain liability insurance or to require its drivers to maintain liability insurance. Plaintiffs argue these regulations apply to the Association because (1) Manion was the Association's agent; (2) Manion was an agent of the Reelfoot-Association joint venture; or (3) as a matter of public policy, the Association was "in the best position to enforce ICC regulations through appropriate requirements of the drivers it hires." Our conclusions on the issues of agency

and joint ventureship dispose of these contentions. If Manion was not an agent of the Association or an agent of a joint venture including the Association and the Association did not hire Manion and had no authority to refuse to deal with him in the instant situation, then the Association was in no position to enforce Manion's compliance with interstate commerce regulations.

We turn to Reelfoot's appeal. Reelfoot contends the trial court erred in refusing to hold that as a matter of law Manion was not Reelfoot's agent. *Cable, Manahan* and *Trzaska* demonstrate that as a matter of law obtaining a delivery driver who supplies his own truck is not alone sufficient to establish an employer-employee or principal-agent relationship. The next inquiry is whether the trial court would be justified on this record in submitting to the jury the question whether anything more than the relationships described in *Cable, Manahan* and *Trzaska* appears here. The answer is that the relationship between Manion and Reelfoot is similar to the relationships in those cases. The facts plaintiffs assert to show Nolan's familiarity with Manion show little other than that the relationship between the two was of some duration. That Nolan called the drivers "his" was of no legal significance. That the Association's bill of lading designated the method of transportation as "own truck" was of no effect as to the relationship between Manion and Reelfoot; it indicated only that the truck to be used was not the Association's. That Reelfoot had the right to cease dealing with Manion states no more than is true between any owner and independent contractor. None of those facts distinguish this case from *Cable, Manahan* or *Trzaska* or afford any basis for concluding Reelfoot exercised control over the manner or method of work as opposed to the mere result. Though Reelfoot kept a copy of Manion's cargo insurance sheet on file, a fact not present in *Cable* or *Manahan* or *Trzaska*, this fact represents no control by Reelfoot over the manner or method of Manion's work.

The summary judgment of the circuit court of Madison County in favor of the Association and against plaintiffs is affirmed. The order in favor of plaintiffs against Reelfoot upon Reelfoot's motion for summary judgment is reversed and this cause is remanded to the circuit court of Madison County for further proceedings.

No. 5—86—0628, affirmed.

No. 5—86—0685, reversed and remanded.

KARNS, P.J. and HARRISON, J., concur.