JERRY McCONNELL, Plaintiff-Appellant, v. FREEMAN UNITED COAL COMPANY, Defendant-Appellee.

Fifth District   No. 5—89—0219

Opinion filed May 7, 1990.

Amiel Cueto and Thomas M. Daley, both of Cueto, Daley, Williams, Moore & Cueto, Ltd., of Belleville, for appellant.

Theodore Williams, Jr., and Thomas B. Weaver, both of Armstrong,

Teasdale, Schlafly, Davis & Dicus, of St. Louis, Missouri, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Jerry McConnell, appeals from an order of the circuit court of Jefferson County granting the motion for summary judgment of defendant, Freeman United Coal Company. In this cause plaintiff raises a single issue, namely, whether the trial court erred in granting defendant's motion for summary judgment. We reverse and remand.

The pertinent facts indicate that plaintiff was employed by Koester Contracting, Inc. (hereinafter Koester), as a scraper operator. A scraper is a large piece of equipment used to scrape dirt and carry it to another location for deposit. Koester had contracted with defendant to construct a slurry impoundment dam at one of defendant's mines located in Waltonville. Upon the dam's construction, there would be a pit area in the middle where slurry from the coal mine would be deposited. The walls around the dam were to be built in nine-inch-thick layers called "lifts." Until a particular lift section had been tested for compliance with contractual specifications, no additional lifts could be placed on top of that section. This necessitated continual retesting by Koester employees and defendant's employees. Under the terms of the contract, Koester was an independent contractor.

In order to create the dam, a scraper had to be used to scrape dirt from the pit area to deposit on the dam. As part of this process, roadways were created at the work site to allow the scraper to get from the pit to the dam and back to the pit again. Vehicles called graders were used to smooth the roadways for scrapers. On September 5, 1985, plaintiff was involved in constructing the dam and was operating a scraper. Plaintiff alleges he suffered injuries to his back when the two front tires of the scraper he was operating went over what was described as a lip or precipice in the roadway created by a grader. Plaintiff described this drop as 1½ to 2 feet and also as in a location where he would ordinarily expect a smooth descent into the pit area. The evidence is disputed as to how this drop originated.

At the time of his injury, plaintiff was an employee of Koester. In addition to Koester employees, defendant's employees also visited the dam site. Plaintiff was allegedly injured when at least two of defendant's employees were present. Specifically, Steve Bishoff, project engineer on the construction site, and Guy Hunt, Bishoff's assistant, both of whom were employed by defendant, were present on the construction site when plaintiff was allegedly injured. Bishoff stated that he usually on the site from 5:30 each morning until anywhere from 4

or 5 o'clock in the afternoon to 8 or 9 o'clock at night from Monday through Saturday.

Although plaintiff was employed by Koester, he filed a two-count complaint against defendant on February 4, 1987. On September 28, 1988, defendant filed a motion for summary judgment. On February 21, 1989, plaintiff filed his second amended complaint. Count I based defendant's liability as landowner for the alleged negligence of Koester as its agent; in the alternative, count II based defendant's negligence on its duty as a landowner for Koester's conduct as an independent contractor; count III sought punitive damages for the conduct described in the first two counts. On March 21, 1989, the trial court granted defendant's motion for summary judgment. No reason for the trial court's decision was stated in its order, nor was there any discussion as to which counts the trial court was granting summary judgment. For purposes of this appeal, we will consider that summary judgment was granted on all counts. Furthermore, because defendant based its motion for summary judgment on the fact that a property owner may not be held liable for injuries caused by the negligence of an independent contractor working on its premises when the landowner does not exercise control over the contractor in the performance of the contract, we will assume that this was the basis for the trial court's decision.

Plaintiff contends that the trial court erred in granting summary judgment for defendant because there are questions of material fact for the jury to decide in this case, specifically, whether Koester was, in fact, an independent contractor, and what control, if any, defendant retained over Koester. Defendant responds that, as a matter of law, Koester was an independent contractor and defendant retained no control over the actions of Koester in performing the contract; therefore, as a matter of law, defendant cannot be held responsible for the injuries caused by the negligence of Koester.

■■■ Summary judgment should be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Generally, a party injured by the negligence of another must seek his remedy against the person who caused the injury. One exception to this rule is the doctrine of *respondeat superior*. (*Perkinson v. Manion* (1987), 163 Ill. App. 3d 262, 266, 516 N.E.2d 977, 980.) Unless the relationship is so clear as to be undisputed, the issue whether one is an agent or an independent contractor is a question of fact, and the right to control

the manner in which the work is to be done is the predominant factor in determining the existence of a principal-agent relationship. (*Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 406 N.E.2d 544.) However, even if one is determined to be an independent contractor, the employer is not insulated from liability, as an employer can still be held liable for the acts or omissions of the independent contractor in certain situations. Section 414 of the Restatement (Second) of Torts provides:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (Restatement (Second) of Torts §414 (1965).)

Comment *c* illuminates this issue even further. It states:

> "It is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts §414, Comment *c*, at 388 (1965).

Section 414 and the comments thereto express the law on this issue in the State of Illinois. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 488, 302 N.E.2d 642, 648; *Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313, 319, 511 N.E.2d 805, 808.) The effect of these provisions has been to broaden the basis upon which liability may be imposed on an owner of land who has contracted for work to be done on his premises. By applying section 414 of the Restatement (Second) of Torts, the courts of Illinois now recognize that an employee hired by an independent contractor to do construction work may obtain recovery for injuries sustained in the course of that work from the owner of the premises when the owner has retained the requisite control over the work and has failed to exercise that control properly. See *Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313, 511 N.E.2d 805; *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642; *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41.

In the instant case, several of defendant's employees visited the site on a regular basis. Bill Mullins, vice-president of underground mining for defendant, went to the jobsite and discussed the progress of the work with Koester's supervisory personnel. According to Mullins, defendant's employees were regularly present to "ensure the specifications were adhered to." Two additional employees of defendant, Steve Bishoff and Guy Hunt, were regularly on the jobsite. In fact, Bishoff stated that he was on site from Monday through Saturday from 5:30 a.m. until 4 or 5 o'clock in the afternoon. Some days Bishoff stayed as late as 8 or 9 o'clock in the evening. According to plaintiff, Bishoff's role was more than ensuring adherence to contract specifications. Plaintiff stated in his deposition that where material was placed "ultimately was probably *** Bishoff's *** decision." Apparently, Bishoff would confer with Allan Rellike, a Koester foreman, on a daily basis about where work was to be done. Bishoff would also tell the Koester foreman, on a daily basis, what portions of the dam met contract specifications and, therefore, had been approved for additional work. Until Bishoff approved an area, no more work could be done on that area. Bishoff himself stated, "So generally, they would ask me, 'Can I load this part of the dam or this part of the dam, or etc., etc.,' and I would tell them 'Yes' or 'No.' " Bishoff also had the authority to halt work so that a test could be taken on a specific area. Michael Rexing, Koester foreman for the second shift from 3 p.m. until 11 p.m., stated in his deposition that defendant's employees would direct them to another area to retrieve material for the dam if the material being used did not meet specifications. According to Rexing, if Koester employees would cut into rock, defendant's employees had the authority to stop them from further cutting into that area and move to another area. Defendant argues that this evidence is insufficient to prove that defendant had sufficient control over the project to create any liability on the part of defendant for plaintiff's injuries. We disagree.

■■■ We find that the evidence supports plaintiff's argument that there are questions of material fact for the jury to decide in this case. First, there is a question whether Koester was an independent contractor or an agent of defendant. The fact that the contract designated Koester as an independent contractor is not controlling; rather, the right to control the manner of doing the work is of principal importance in the consideration of this question. (*Darner v. Colby* (1941), 375 Ill. 558, 561, 31 N.E.2d 950, 952; *Perkinson v. Manion* (1987), 163 Ill. App. 3d 262, 266, 516 N.E.2d 977, 980.) If the person for whom the work is being done retains the right to control the man-

ner in which the work is done, the relation of employer and employee exists. (*Darner*, 375 Ill. at 561, 31 N.E.2d at 952.) Where one undertakes to produce a given result without being in any way controlled as to the method by which he attains it, he is considered an independent contractor rather than an employee. (375 Ill. at 561, 31 N.E.2d at 951.) However, even if Koester is found to be an independent contractor, a second question remains, namely, whether defendant retained sufficient control over the slurry impoundment dam project under section 414 of the Restatement (Second) of Torts so that defendant can be held liable for the injuries of plaintiff for failure to properly exercise that control. Whether defendant controlled the project to the extent that Koester is an agent of defendant or whether defendant retained such control over Koester as an independent contractor to impose liability are questions that are far from settled.

■■ Defendant maintains that its employees only had the right to ensure compliance with contract specifications, which is not sufficient to support liability. (*Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313, 319-20, 511 N.E.2d 805, 809.) However, in construing the pleadings, affidavits, and depositions strictly against the movant as we are required to do when reviewing a motion for summary judgment (*Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 496), we believe that there are questions of fact as to what amount of control defendant retained over the dam project. As we found in *Haberer*, it is not clear what effect defendant's employees' communications with Koester's supervisors carried. (See *Haberer*, 158 Ill. App. 3d at 320, 511 N.E.2d at 809.) Defendant's entitlement to summary judgment was not clear and free from doubt, and its motion should have been denied.

For the foregoing reasons, the order of the circuit court of Jefferson County is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARRISON and WELCH, JJ., concur.