**S. Donald VALENTI and Patricia Valenti, Plaintiffs–Appellants,**

**v.**

**QUALEX, INC., Defendant–Appellee.**

No. 91–1329.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1991.

Decided Aug. 7, 1992.

Joel L. Hecker, New York City (argued), Mark H. Barinholtz, Chicago, Ill., for plaintiffs-appellants.

Diane M. Kehl, Donald W. Jenkins (argued), Stephen L. Sitley, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Plaintiffs, professional photographers, brought this diversity suit against Qualex, Inc., a partnership of Kodak and Fuqua that owns film development laboratories. Plaintiffs alleged that the defendant negligently damaged the images of 43 rolls of film and breached its agreement to develop the film properly. They claimed damages in the amount of $2,415,000, or $1,500 per image. The district court granted summary judgment to Qualex. We affirm that decision.

I.

Our review of a district court's grant of summary judgment is *de novo*. *Capital Options Investments, Inc. v. Goldberg Bros. Commodities*, 958 F.2d 186, 188 (7th Cir.1992). Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be rendered if the

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

pleadings and other filings "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] Fed. R.Civ.P. 56(c). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Summary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510, "Mindful that [nonmovants'] version of any disputed issue of fact thus is presumed correct, we begin with the factual basis of [nonmovants'] claims." *Eastman Kodak Co. v. Image Technical Services, Inc.*, — U.S. —, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992) (with reference to *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 339, 102 S.Ct. 2466, 2470, 73 L.Ed.2d 48 (1982)).

## II.

According to their complaint, in April 1989 plaintiffs shot 427 rolls of film in Spain. Upon their return they delivered the film to Colonial Camera Shop in La-Grange, Illinois, a store with which they regularly did business. Together plaintiffs and Colonial employees put tags on the film. Then, complying with plaintiffs' instructions, Colonial separated the film into four batches to protect against loss or damage in the processing, and delivered each group on four successive days (May 15 through 18, 1989) to Qualex. On May 19, after Qualex reported to Colonial that it had damaged some rolls of film, Colonial's president, Steven Isenberg, telephoned Don Valenti to notify him. Several days later two identical letters[2] were sent by Qualex's Customer Services Representative to Colonial, expressing his distress over this "unexpected incident." The letter, in pertinent part, stated:

Attention: Valenti, Customer

Dear Customer:

Given the quality expectations you have as a professional customer, we are disappointed to report that your film was improperly processed by our laboratory. This certainly is not exemplary of the type of quality in which we take great pride.

. . . . .

Of course, there is no charge for your order and we are enclosing replacement film(s) in accordance with our statement of responsibility. The processing incident has been reviewed with the appropriate management and laboratory personnel to prevent a recurrence and to reinforce the importance of maintaining our superior quality standards.

As a valued professional customer, you may be assured of our commitment to serve your future processing needs in a high quality manner.

Colonial forwarded the replacement film from Qualex to plaintiffs, but the Valentis declined to accept it. Instead, in October 1989 they filed their complaint against Qualex, charging negligence in its developing process, which deprived the plaintiffs of the use and benefit of 1610 images, and breach of its agreement to develop the film properly.

Granting summary judgment to Qualex, the court found first that there was neither a direct contractual relationship between Qualex and plaintiffs nor a contract established by an agency relationship between Qualex and Colonial. With respect to the negligence claim, the court found that plaintiffs' prayer for $1,500 per negative was a claim for damages for lost income from an asset that they intended to sell.

---

1. As a federal court sitting in diversity, we must apply state law to resolve all substantive questions. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1407 (7th Cir.1991). The parties do not dispute that Illinois law governs this suit.

2. The only difference between the letters was the listing, at the bottom of each letter, of the numbers of the damaged orders.

Because Illinois' *Moorman* Doctrine bars recovery of economic damages in negligent tort actions such as this one, the court granted summary judgment to the defendant on the negligence claim as well as the breach of contract claim. Plaintiffs appeal each of these determinations.

## A. *Contractual relationship*

In their complaint the plaintiffs charged that Qualex failed to develop their film properly, in breach of its agreements with them. Both before the district court and on appeal they argue that they were doing business with Qualex, not Colonial, and that Colonial was simply the drop-off location for service by Qualex. They claim they have raised a genuine issue of material fact concerning whether a contract was established between them and Qualex by delivering their film to Colonial as the drop-off point. Further, they point to the defendant's two letters to "Valenti, Customer," as evidence that Qualex considered the Valentis to be their, not Colonial's, customers.

The district court found that, because the Valentis dealt solely with Colonial and never directly with Qualex, no contractual relationship existed between plaintiffs and defendant. By offering their film to Colonial and obtaining Colonial's acceptance the plaintiffs established a contract with Colonial, not Qualex. The court rejected plaintiffs' assertion that a contractual relationship was established with Qualex because plaintiffs intended that the film be processed by Qualex. [Tr. at 4.]

■■■■ We agree that plaintiffs failed to demonstrate a contract with Qualex. In order to meet their burden of proof on the breach of contract count, plaintiffs must first prove that a contract existed. They were therefore required to establish offer, acceptance, consideration, the terms of the contract, plaintiff's performance, defendant's breach of the terms of the contract, and damage resulting from that breach. *Penzell v. Taylor*, 219 Ill.App.3d 680, 162 Ill.Dec. 142, 147, 579 N.E.2d 956, 961 (1991).

For the court to find that an enforceable contract exists, the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied. When the material terms and conditions are not ascertainable no enforceable contract is created.

*Id.* (citations omitted). In this case, the Valentis delivered rolls of film to Colonial for development; Colonial accepted the film for processing and returned the developed film to plaintiffs for compensation. The plaintiffs made no showing of the elements required to establish an agreement between themselves and Qualex. It is clear that the district court properly recognized that no contractual relationship was formed between the Valentis and Qualex.

The only evidence plaintiffs offer to show that Qualex acknowledged a contractual relationship with the Valentis was the letters from Qualex. As the district court correctly noted, letters addressed to Colonial, to be referred to Valenti, a customer, were insufficient evidence of a contractual relationship between the Valentis and Qualex. The reference to the customer in those letters is too vague to be indicative of an enforceable contract. *See, e.g., Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992) (letter contained no expression of intent to define obligations or to establish agreement or promise). This court upholds the district court's conclusion that no direct contract existed between plaintiffs and defendant.

## B. *Agency relationship*

The district court likewise determined that no agency relationship between Qualex and Colonial was properly alleged:

In the instant case, plaintiffs have merely alleged in conclusory fashion that Colonial was an agent of Qualex. Self-serving characterizations by parties are irrelevant in determining if a particular individual (or company) is an agent or an independent contractor.

Tr. at 5 (citation omitted). The court then pointed out that plaintiffs failed to show Qualex's right of control over Colonial: There was evidence that Colonial employees and Qualex representatives met, but,

because Colonial's president was not a party and there was no evidence concerning the subject matter of the meetings, the court concluded that the meetings were insufficient proof of control. It also found that plaintiffs failed to dispute Qualex's statement of undisputed facts in the manner required by Local Rule 12.[3] For example, plaintiffs improperly denied that Colonial (rather than plaintiffs) selected Qualex for processing without citing to the record; they also failed to dispute that Colonial alone established the price for processing. Since mere allegations of a factual dispute do not defeat a summary judgment action, the court found that the defendant was entitled to summary judgment on the breach of contract claim. [Tr. at 7 (citation omitted).]

On appeal plaintiffs argue that the court erroneously determined that independent contractor status precluded agency status. They insist that Colonial could be an independent contractor as well as an agent of Qualex, and that this issue is a question of fact requiring a trial.

Such a claim reflects a misunderstanding of the district court's position, we believe. The court clearly meant that factual evidence, not conclusory allegations, must be presented by the plaintiffs to support their agency argument, and that the determination whether a party is an agent or independent contractor is to be made, not by "self-serving characterizations," but rather by evidence of the alleged principal's right of control. The court neither stated nor implied that Colonial is an agent or independent contractor; it simply indicated that plaintiffs failed to carry their burden of presenting sufficient evidence of agency.

Under Illinois law, "the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact," unless the relationship is "so clear as to be undisputed." *Rankow v. First Chicago Corp.*, 870 F.2d 356, 359 (7th Cir. 1989) (citations omitted). The same rule is applied when choosing between agency and independent contractor status; and "the right to control the manner in which the work is to be done is the predominant factor in determining the existence of a principal-agent relationship." *McConnell v. Freeman United Coal Co.*, 198 Ill. App.3d 322, 555 N.E.2d 993, 995 (1990). However, in order to survive a summary judgment motion, the complaint and filings supporting it must allege specific facts regarding the circumstances from which the existence of the relationship can be inferred. The party alleging an agency relationship has the burden of proving it. *Matthews Roofing v. Community Bank & Trust*, 194 Ill.App.3d 200, 141 Ill.Dec. 143, 147, 550 N.E.2d 1189, 1193 (1990).

---

**3.** Local Rule 12 of the Northern District of Illinois, amended effective June 4, 1990, redesignates the lettered subsections without changing their provisions. In pertinent part the rule states:

(m) *Motions for Summary Judgment; Moving Party.* With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law including a description of the parties and all facts supporting venue and jurisdiction in this Court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

(n) *Motions for Summary Judgment; Opposing Party.* Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal. The ability or right to control is a key element to the determination, regardless of whether or not the principal exercises that right to control. The question of whether a principal-agency relationship existed is generally one of fact, but it becomes one of law where the evidence is not disputed. Summary judgment may be granted in any case where an issue of fact is raised if, when viewing the evidence in a light most favorable to the plaintiff, the trial court concludes that no liability exists as a matter of law.

*Anderson v. Boy Scouts of America, Inc.*, 226 Ill.App.3d 440, 168 Ill.Dec. 492, 494, 589 N.E.2d 892, 894 (1992) (citations omitted).

 Plaintiffs have failed in this burden of proof. They did not allege agency in their complaint, and raised it only as an unsupported conclusory assertion in their Rule 12(n) statement. Qualex's Rule 12(m) statement of undisputed material facts contained this fact:

13. Qualex deals with Colonial, not customers of Colonial. Colonial is an account of Qualex. Colonial has a monthly account with Qualex. When Colonial sends film to Qualex for processing, Colonial is obligated to pay Qualex whether or not Colonial is paid by its customers.

Plaintiffs' 12(n) response contains their sole agency allegation:

13. Plaintiffs dispute that Qualex deals only with Colonial. Moreover, Colonial is an agent of Qualex and thus Qualex is responsible for the actions of its agent.

Each of Qualex's statements under number 13 is supported by a reference to a deposition in the record. The Valentis' response, in contrast, makes no reference to evidence in the record that buttresses their denial.[4]

The Valentis respond that they have proven agency through the two letters delivered by Colonial from Qualex to "Valenti, Customer," and the Valentis' clear intention that Colonial deliver the film to Qualex for processing. Although plaintiffs concede that they did not specifically refute all of the defendant's statements and evidence, they insist that section B of their Rule 12(n) statement contains ample facts showing that Colonial and Qualex agreed that Colonial had the authority to bind Qualex to a contract for the processing of film. When that statement is read in its entirety and in the light most favorable to them as nonmovants, they contend, it is clear that Colonial did not "apparently" select Qualex to develop the Valentis' film, as the district court stated, but rather that there was an unequivocal understanding between the Valentis and Colonial that their film would be sent to Qualex for processing.

 Our review of the record indicates that the district court correctly assessed plaintiffs' failure to respond properly to defendant's Rule 12 statement of undisputed material facts. This court has upheld the strict application of Rule 12(n). *See Capitol Converting Equipment, Inc.*

---

4. Plaintiffs' second sentence of response number 13, the assertion of an agency relationship, is not supplemented by any supporting reference. Their first sentence, a general denial response, is followed by a reference to section B of their Rule 12(n) statement, paragraphs 42 and 46–52, which present plaintiffs' own version of the undisputed material facts rather than controverting defendants' statement. Paragraphs 46 through 52, containing portions of Qualex's letters to Colonial, for Valenti's attention, offer no proof of an agency relationship between Qualex and Colonial. Paragraph 42 is equally ineffective; it states: "The Valentis accepted Qualex's offer to process their film by having the film delivered to Qualex in accordance with Qualex's directions. (See exh. 5, DV Dep. 2 at 101–102.)" "DV Dep." is plaintiff Don Valenti's affidavit. However, pages 101 and 102 contain no discussion of an offer or of directions by Qualex; there is only the plaintiff's statement that Colonial's president notified him of the damage to his film. Therefore response 13 does not properly controvert Qualex's statement 13. We advise that this court disapproves of the faulty format of plaintiffs' 12(n) statement, their exhibits containing only portions of depositions, and their mistaken references to what little record is provided.

v. *LEP Transport, Inc.*, 965 F.2d 391, 394 (7th Cir.1992); *Appley v. West*, 929 F.2d 1176, 1179 (7th Cir.1991); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990). Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted. *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990) (citations omitted). Moreover, a Rule 12 responsive statement that is a flat denial, without reference to supporting materials, or with incorrect or improper references, and containing irrelevant additional facts, has no standing under Rule 12(n). *See Bell, Boyd & Lloyd, supra.*

We hold that the Valentis' response violated the rigorous requirements of specificity and documentation that Rule 12(n) imposes. Furthermore, because their conclusory, unsupported allegation of agency fails to meet the requisite burden of proving the existence of an agency relationship, we uphold the district court's determination that the defendant was entitled to summary judgment on the breach of contract claim.

## C. *Moorman Doctrine*

In their complaint plaintiffs alleged that defendant's negligence deprived them of the use and benefit of 1610 images, and sought $1,500 per transparency in damages. The district court found that, because those economic damages are not compensable in tort law under the *Moorman* Doctrine, the defendant was entitled to summary judgment as a matter of law on the negligence claim.

In *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), plaintiff sued the company that designed, manufactured, and sold plaintiff a defective storage tank, seeking damages representing the cost of repairs and reinforcement as well as loss of use of the tank. The Illinois Supreme Court held that Illinois law does not permit a tort suit seeking economic loss, which the court defined as "damages for inadequate

value, costs of repair and replacement of the defective product, and consequential loss of profits." 61 Ill.Dec. at 751, 435 N.E.2d at 449. Such a claim should be brought under contract, not tort, law.

Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence.

*Id.* at 752, 435 N.E.2d at 450. The rule has been upheld consistently in Illinois (*see, e.g., 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990); *Johnston v. Tri–City Blacktop, Inc.*, 217 Ill.App.3d 388, 160 Ill. Dec. 399, 577 N.E.2d 529 (1991); *Collins v. Reynard*, 195 Ill.App.3d 1067, 142 Ill.Dec. 719, 553 N.E.2d 69 (1990), *aff'd*, No. 70325, 1991 WL 220561 (S.Ct.Ill. Oct. 31, 1991) [5]) and by the Seventh Circuit (*see, e.g., Rardin v. T & D Machine Handling, Inc.*, 890 F.2d 24 (7th Cir.1989); *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508 (7th Cir.1988); *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174 (7th Cir.1986)). As *Bethlehem Steel* summarizes *Moorman*,

the basic principle of *Moorman* is that the type of loss, not the defendant's conduct, is critical. When only economic loss is incurred, the plaintiff may only raise contract theories even if the defendant's alleged conduct constituted a tort as well as a breach of contract.

*Bethlehem Steel*, 863 F.2d at 523.

The Valentis raise a distinction between damages arising out of a defective product, which is clearly barred by *Moorman*, and those arising from a "defective service" performed upon their film. The Illinois Supreme Court has made clear that such a distinction must fail:

Just as in the case of qualitative defects in products, qualitative defects in services can defeat the purchaser's commercial expectations. There is simply no basis for applying this doctrine to products but not to services.

**5.** Until this affirmance by the Supreme Court of Illinois is released for publication in the permanent law reports it is subject to revision or withdrawal.

*Collins,* 1991 WL 220561, at *3. *See also* 142 Ill.Dec. at 722, 553 N.E.2d at 72.

■ Plaintiffs also argue that they sought damages for the actual value of the property destroyed, rather than for loss of profit. However, both their complaint and the case law supporting it refer to damages for the "use and benefit" of the film. Under Illinois law "[a] buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." *Id.* at *2 and 142 Ill.Dec. at 720, 553 N.E.2d at 70 (citing *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 414, 441 N.E.2d 324, 327 (1982)). Just as the *Collins* plaintiff was unable to recover the profits and earnings she lost on account of defendant's negligence, the plaintiffs herein are barred from recovering their economic losses caused by defendant's negligence.[6]

Plaintiffs urge this court that *Rajkovich v. Alfred Mossner Co.,* 199 Ill.App.3d 655, 145 Ill.Dec. 726, 557 N.E.2d 496 (1990), is controlling herein. In that case the defendant damaged plaintiffs architectural drawing, and plaintiff sought the replacement cost of the property. The Illinois appellate court determined in *Rajkovich* that the defendant, a bailee for mutual benefit, negligently failed to exercise reasonable care over the drawing. In the same way, argue plaintiffs, Qualex owed them a duty of reasonable care: By their negligent destruction of the Valentis' film, bailee Qualex is liable for the value of the destroyed property.

The district court disagreed; because the *Rajkovich* plaintiff sought only the replacement cost of a destroyed architectural drawing, and not lost revenues, the case was distinguishable from the one herein and was not barred by *Moorman.* This court concurs in the district court's analysis, and notes, as well, other distinctions

between *Rajkovich* and this case. For example, the Valentis have not established an express or implied contract with Qualex, as required in the law of bailments. *See Rajkovich,* 145 Ill.Dec. at 728–29, 557 N.E.2d at 498–499. Nor have they "set out facts sufficient to establish the existence of a duty owed by the defendant to the plaintiff," as required in an action for negligence. *Dvorak v. Primus Corp.,* 168 Ill. App.3d 625, 119 Ill.Dec. 219, 224, 522 N.E.2d 881, 886 (1988). *Rajkovich* in no way controls the facts herein.

In contrast, this circuit's *Rardin* decision is quite relevant to our analysis. Like the *Rardin* defendant, Qualex did not deal directly with plaintiffs, owed no duty directly to plaintiffs, and is not liable to plaintiffs under Illinois tort law. *Rardin,* 890 F.2d at 26. Like the *Rardin* plaintiff, the Valentis could have protected themselves against the consequences of Qualex's negligence (perhaps by dealing directly with Qualex and making an agreement with the processor on the value of their film, or perhaps by insisting on a guarantee from Colonial against unforeseen consequences), but did not do so. *Id.* In light of the *Moorman* doctrine and Illinois cases that followed, *id.* at 27–28, they cannot now "require the tort system to compensate [them] for business losses occasioned by negligent damage to [their] property." *Id.* at 29.

We conclude that the district court's analysis of the Valentis' negligence claim was sound. Plaintiffs sought the benefit of their damaged transparencies, which was the lost revenues they had expected. These are economic damages arising in a commercial setting, and as such are barred by *Moorman.*

### III.

After reviewing the record in the light most favorable to the Valentis, we hold

---

**6.** Chief Justice Miller wrote a strong dissent in *Collins.* However, it only weakens plaintiffs' position, for it focuses on the inappropriateness of fitting attorney malpractice actions like *Collins* into *Moorman's* "economic-loss, or commercial-loss doctrine, [which] denies a remedy

in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." 1991 WL 220561, at *8. The case herein is a classic example of one rooted in disappointed commercial expectations. As such, its remedy in tort must be denied.

that plaintiffs have failed to show that there is a genuine issue of material fact concerning either a breach of contract or negligence by Qualex. The plaintiffs' contract arguments are based on mere allegations, unsubstantiated by specific facts. Their negligence claim is barred as a matter of law by *Moorman*. Therefore the decision of the district court granting summary judgment in favor of Qualex is AFFIRMED.