WILLIAM SHOEMAKER, Guardian of the Estate of Katherine Shoemaker, *et al.*, Plaintiffs-Appellees, v. ELMHURST-CHICAGO STONE COMPANY, INC., Defendant-Appellant.

First District (3rd Division)   No. 1—91—1569

Opinion filed November 23, 1994.—Rehearing denied July 11, 1995.—Modified opinion filed July 12, 1995.

William J. Hare, of Laughlin, Cunningham, Hare & Fanone, and Francis D. Morrissey, of Baker & McKenzie, both of Chicago, for appellant.

David A. Novoselsky and Linda A. Bryceland, both of David A. Novoselsky & Associates, and Jerry A. Latherow, Ltd., both of Chicago, for appellees.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Elmhurst-Chicago Stone Company, Inc. (Elmhurst), appeals from the judgment entered against it by the circuit court of Cook County in favor of plaintiffs, William Shoemaker, guardian of the estate of Katherine Shoemaker, and Nancy Shoemaker, guardian of the estate of the person of Katherine Shoemaker, in their action arising out of personal injuries sustained by Katherine in a vehicle collision. Among Elmhurst's arguments on appeal are that: (1) it was not liable as a matter of law for the actions of the driver of the truck that collided with the automobile in which plaintiffs' ward was riding because the truck driver was not Elmhurst's agent; and (2) the evidence did not establish that the truck driver was Elmhurst's agent. We reverse.

The issue in this case is whether a principal-agent relationship is established between a truck owner and a shipper when the truck owner enters into a lease with an Illinois Commerce Commission (ICC) certified carrier who directs the truck owner to the shipper to pick up and deliver goods to locations designated by the shipper.

Plaintiffs' second amended complaint alleged the negligence of Elmhurst and the other defendants, Greg W. Anderson and Lawrence Trucking, Inc. The following allegations are relevant to the appeal. On September 18, 1985, plaintiffs' ward was a passenger in a car that was being driven eastbound on Route 68 in Cook County, Illinois. The car was turning northbound onto Hicks Road when it was struck by a truck driven by Anderson.

Plaintiffs settled with Anderson and Lawrence Trucking.

The following is a summary of the trial testimony relevant to the issue of whether Anderson was Elmhurst's agent.

Greg Anderson testified that he owned the truck involved in the accident but it was leased then to Lawrence Trucking. At the time of the accident, Anderson's truck was empty. In order for him to conduct the business of hauling for hire, he had to enter into a written lease

agreement as required by the ICC. He could not legally haul for hire without an ICC permit, which Lawrence Trucking possessed. He did not have an ICC permit of his own. Anderson's truck carried the identification of Lawrence Trucking and its ICC numbers. There was no identification on the truck showing that he owned it. The only reason he had Lawrence Trucking's sign on his truck was to comply with ICC requirements. There were times when the truck also had the ICC numbers of another company. He also had a lease arrangement with at least one other trucking company. The terms of the lease agreement provided that Lawrence Trucking would have exclusive control for the leased truck while it was being used by or for Lawrence Trucking. In 1985, the majority of his work was done for Elmhurst at the direction of Lawrence Trucking.

Anderson further testified to the following.

Lawrence Trucking would obtain the hauling jobs and would receive 5% of the gross compensation. Anderson paid his expenses of driving the truck such as fuel and repairs. There were no taxes or other deductions withheld from his 95% payment. He did not receive employment benefits from Lawrence Trucking. If for some reason Elmhurst did not pay Lawrence Trucking, he would still expect to be paid by Lawrence Trucking. He would go to the jobs as Lawrence directed him but he determined whether he would accept a load. Anderson had no agreement with Elmhurst. Elmhurst never set any rules about how his truck was to be driven. He determined what route he would take. Elmhurst could not have terminated his arrangement with Lawrence Trucking, but Lawrence Trucking could have severed his relationship with Elmhurst.

James C. Lawrence testified to the following. He was the owner of Lawrence Trucking. He entered into equipment leases with Anderson and others so that he could service customers when his own truck drivers were busy. Although he leased tractors and trailers, he did not have physical possession of the equipment. Anderson was in charge of maintenance for his tractor and trailer. Customers could not legally pay Anderson directly. Anderson would receive a Lawrence Trucking check. Anderson was never his employee. If Elmhurst had called him and said not to send Anderson because of a specific reason, he would not have sent Anderson.

The evidence deposition of George F. Hammersmith was read into evidence, and he testified to the following. He was the former vice-president and traffic manager of Elmhurst, which was in the business of selling construction materials. Elmhurst's customers either picked up the materials themselves or truck drivers delivered the materials for Elmhurst to the customers. Elmhurst had day-to-

day hauling arrangements with trucking companies. Lawrence Trucking had hauled materials for Elmhurst for a few years. Elmhurst's central dispatch would call a trucking company and instruct it to send trucks the next day to one of Elmhurst's plants to pick up loads to deliver. Elmhurst did not have written contracts with either the trucking companies or the truck drivers.

Hammersmith further testified to the following.

When a truck driver arrived at one of Elmhurst's plants, the truck would be weighed and loaded. An Elmhurst employee might assist a truck driver in loading with Elmhurst's loading equipment but a truck driver could load the truck himself. An Elmhurst employee operated the weight scale. A truck driver would sign a load ticket, which contained the name and address of the customer's company, the type of material being hauled, and the weight of the material. If the customer gave directions, Elmhurst would pass on those directions to the truck driver. Maps were available at the plant. Defendant had no contact with the truck drivers once they left the plant. Elmhurst had nothing to do with the truck drivers' routes or the manner in which the truck drivers drove the trucks. After a truck driver delivered a load to a customer, the customer would sign the truck driver's load ticket. After the receipt was signed by a customer, the receipt was returned to Elmhurst by the driver. Payment was not made directly to the truck driver.

Hammersmith further testified to the following.

Elmhurst did not have the right to discharge a truck driver on the basis of a complaint. Elmhurst was not a licensed ICC carrier. If Hammersmith received a complaint about a truck driver, he would contact the trucking company and would hope that the company would handle the problem. If the trucking company did not do so, he supposed that Elmhurst would not hire the company.

The jury was given a special interrogatory asking whether Elmhurst had the right to control Anderson's actions. The jury responded affirmatively and found in favor of plaintiff against Elmhurst. Over $4 million in damages were awarded.

■ Elmhurst first argues on appeal that it could not be held liable as a matter of law for the actions of Anderson in driving the truck because Anderson was an independent contractor and was not Elmhurst's agent. Elmhurst argues that it did not have the right to control Anderson's conduct. The following cases cited by Elmhurst involved the issue of whether a truck driver was an independent contractor.

In *Perkinson v. Manion* (1987), 163 Ill. App. 3d 262, 516 N.E.2d 977, a truck driver called a packing company inquiring about work

and was told to telephone a livestock association for the location of a load to be transported to the packing company's plant. The driver made one or two hauls a week to the packing company's plant, and he was paid by the packing company. He also hauled for other companies. The agreement for the sale of livestock entered into between the seller livestock association and the buyer packing company required the packing company to arrange transportation, and the association had no control over whom the packing company retained to transport the load.

The court noted the following statements of law concerning agency. Whether the relationship of principal and agent or owner and independent contractor existed was a question of fact for the jury unless the relationship was so clear as to be indisputable. (*Perkinson*, 163 Ill. App. 3d at 266.) The existence of either relationship depended upon such facts as the matter of hiring, right to discharge, manner and direction of servants, right to terminate the relationship, and the character of the supervision of the work done. (*Perkinson*, 163 Ill. App. 3d at 266.) An independent contractor was one who rendered service in the course of an occupation and represented the will of the person for whom the work was done only with respect to the result and not the means by which that result was accomplished. (*Perkinson*, 163 Ill. App. 3d at 266.) If the person for whom the service was rendered retained the right to control the details of the work and the method or manner of its performance, the relationship of employee and employer existed. (*Perkinson*, 163 Ill. App. 3d at 266.) The right to control the manner of doing the work was an important, if not the principal, consideration that determined whether the worker was an employee or an independent contractor. *Perkinson*, 163 Ill. App. 3d at 266.

The court found that the seller association had no control over whom the buyer packing company sent to take possession of the load and had no authority to tell the driver how to do the job. (*Perkinson*, 163 Ill. App. 3d at 266.) The driver was not the seller's agent. *Perkinson*, 163 Ill. App. 3d at 267.

In *Trzaska v. Bigane* (1945), 325 Ill. App. 528, 60 N.E.2d 264, plaintiffs were injured in a car collision with a truck driven by defendant who had earlier delivered a load for a coal company. The coal company had its own drivers and at times employed other drivers, including defendant. Defendant owned the truck in which he delivered the coal, and he paid for the truck's upkeep and gasoline. The court held that the only reasonable conclusion was that defendant was not the agent of the coal company but was an independent contractor. *Trzaska*, 325 Ill. App. at 535.

In *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 16, 365 N.E.2d 1045, the court held that defendant newspaper deliveryman was an independent contractor as a matter of law. The court noted that an independent contractor was one who was not subject to the orders or control of the other party in respect to the details of the work and that he represented the will of the person for whom the work was done only as to the results and not as to the means by which the job was accomplished. (*Manahan*, 50 Ill. App. 3d at 14.) The actual conduct rather than a contract determined whether one was an independent contractor. (*Manahan*, 50 Ill. App. 3d at 14.) The agreement provided that the driver was to deliver copies of the paper at designated hours to designated persons, that the driver had the right to determine the routes to be taken, that defendant should exercise no control over the driver's operation as independent contractor, and that the driver was to pay all taxes.

In *Cable v. Perkins* (1984), 121 Ill. App. 3d 127, 129, 459 N.E.2d 275, the court held that a newspaper deliverywoman was an independent contractor as a matter of law. The contract provided that the driver was to supply all necessary manpower and vehicles, was to pay all delivery expenses at a flat rate of compensation, and was to pay her own taxes. Although the route was designated by the company, she was not instructed how to make deliveries.

We hold that, as a matter of law, Anderson was not the agent of Elmhurst. Elmhurst did not have the right to control the manner in which Anderson performed his job of hauling loads. Elmhurst's weighing the truck and assisting or overseeing the loading of the truck were preliminary tasks necessary before the driver could begin to perform his job. Elmhurst's instructing Anderson where he should deliver the load did not control the manner in which the job was done but rather specified the particular hauling task for which Lawrence Trucking was hired. Elmhurst did not control Anderson's driving or other conduct in hauling the load. Elmhurst did not pay Anderson. Elmhurst could not hire or fire Anderson directly. Anderson was not Elmhurst's employee.

■ Nor was Anderson a loaned servant of Elmhurst, as plaintiffs argue in the alternative, one of the reasons is that Elmhurst could not discharge Anderson. (See *Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 719, 394 N.E.2d 1230 (a person cannot become a loaned employee of the second employer unless the latter has the power to discharge the employee).) Also, several other factors bearing on the issue of whether a borrowed-employment relationship exists are: the extent of a borrowing employer's control over a plaintiff; whether an employee consented to the alleged loan of ser-

vices; the terms of any written contract between the two alleged employers; the length of service for the borrowing employer; the identity of the party for whom the employee's services are being performed; and the manner of hiring. (*O'Loughlin v. ServiceMaster Co. Ltd. Partnership* (1991), 216 Ill. App. 3d 27, 34, 576 N.E.2d 196.) On the basis of the evidence in this case we hold, as a matter of law, that Anderson was not a loaned servant of Elmhurst.

In this case Anderson was never employed by Lawrence Trucking. Anderson owned his own truck and paid for the expenses of maintaining it, including fuel and repairs. Lawrence Trucking never paid Anderson wages, nor were any taxes or other deductions withheld. The lease agreement between Lawrence Trucking and Anderson provided that Lawrence Trucking would receive 5% of the gross compensation for obtaining hauling jobs. Anderson was not entitled to any employment benefits. Although Lawrence Trucking directed Anderson as to where to go to pick up a load, it was left to Anderson whether to accept the work. We hold that Anderson was an independent contractor and that he was never an employee of Lawrence Trucking. We note that vicarious liability is not an issue in this appeal. The loaned employee doctrine provides that an employee in the general employment of one person may, with his consent, be transferred or loaned to another for some particular work in such a way as to become a servant of the other in doing that work. (*Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1237.) In this case, Anderson was never an employee in the general employment of Lawrence Trucking. Therefore, he could never have been loaned by Lawrence Trucking or borrowed by Elmhurst. The other factors in determining whether Anderson was a loaned employee indicate that Anderson was never an employee of Elmhurst.

The judgment of the trial court is reversed.

Reversed.

TULLY, P.J., and RIZZI, J., concur.