No. 1-97-0599

December 28, 1998

JOSEF SOBCZAK and ANNA SOBCZAK, ) Appeal from the

) Circuit Court of

Plaintiffs-Appellees, ) Cook County.

)

) 91 L 20970

)

JOSEPH FLASKA, ) Honorable

) Jerome T. Burke,

Defendant-Appellant. ) Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Josef Sobczak, a construction worker, was injured when the bulldozer he was operating slid off its flat-bed trailer and rolled 90 degrees, landing on top of his leg. Sobczak and his wife, Anna, brought suit against various defendants including defendant Joseph Flaska, alleging violations of the Structural Work Act (740 ILCS 150/1 et seq. (West 1996)) and common law negligence. Anna’s claims were based on her loss of consortium. Following trial, a jury returned a verdict in favor of both plaintiffs on the negligence claims. Flaska now appeals. 

On the day of his injury, July 19, 1990, Sobczak was employed as a laborer by Harbor Properties, Inc. (Harbor Properties). Harbor Properties renovates, owns and manages commercial property in the Bedford Park area of Chicago. Sobczak was not working in Bedford Park on the day of his injury, however, but at defendant Flaska’s home, in Palos Park. Earlier in the day, Sobczak had been directed to go to Flaska’s home by one of Harbor Properties’ managers. Flaksa was Sobczak’s immediate boss at Harbor Properties one of its three shareholders, as well as a Harbor Properties’ full-time employee. Harbor Properties owned the bulldozer Sobczak was operating when he was injured, a Case Model 350 crawler tractor. The vehicle was about 30 years old and had recently been purchased in a disassembled condition. Flaska had supervised Sobczak in its assembly a few weeks prior to the accident.

Initially, Flaska argues that the trial court improperly denied his motion for judgment 
non
 
obstante
 
veredicto
 because he is immune from suit under the terms of the Worker’s Compensation Act (Act) (820 ILCS 305/1 et seq. (West 1996). Section 5(a) (850 ILCS 305/5(a)(West 1996)) provides that an employee’s remedy under the Act is exclusive and in lieu of all possible common law actions against an employer, its agents, or employees, for any injury occurring during the course of the employment. In addition to barring common law actions for damages by an employee against an employer, section 5(a) precludes actions by an employee’s spouse, such as Anna Sobczak, for loss of consortium.  
Fregeau v. Gillespie
, 96 Ill. 2d 479, 451 N.E.2d 870 (1983).

Sobczak argues waiver in responding to Flaska’s immunity claim, noting that Flaska failed immunity prior to trial. The exclusivity provision of  Section 5(a) of the Act is an affirmative defense and is waived if not timely raised. As our supreme court has stated:

 "The Worker's Compensation Act provides employers [as well as their agents and employees] with a defense against any action that may be asserted against them in tort, but that defense is an affirmative defense whose elements--the employment relationship and the nexus between the employment and the injury--must be established by the [defendant], and which is waived if not asserted by him in the trial court." 
Doyle v. Rhodes
, 101 Ill. 2d 1, 11, 461 N.E.2d 382 (1984). 

Flaska responds that it was unnecessary for him to plead immunity because Sobczak readily conceded Flaska’s immunity in pre-

trial proceedings.

After carefully reviewing the record, we reject Sobczak’s waiver claim. We note that Sobczak admitted in his complaint that he was an employee of Harbor Properties at the time of his injury and that there was a nexus between his injuries and his duties as a Harbor Properties’ employee. Sobczak concedes that he brought a successful Worker’s Compensation claim against Harbor Properties following his injury. Although we recognize that Flaska failed to plead immunity as an affirmative defense, he did file a detailed summary judgment motion setting out such a claim. Sobczak answered the motion on the merits.

It is well established that the waiver doctrine is a limitation on the parties and not the court. 
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 11, 672 N.E.2d 1178 (1996); 
People v. Hoskins
, 101 Ill. 2d 209, 219, 461 N.E.2d 941 (1984). Any waiver in the present case was technical only, and certainly did not prejudice Sobczak. Accordingly, although we find that section 5(a) immunity should have been affirmatively pled by Flaska in order to properly join the issue at trial, we decline to apply waiver.

Turning to the merits, Sobczak argues that even if Flaska has section 5(a) immunity as an agent of Harbor Properties, he does not have that immunity as a “homeowner/general contractor.” Illinois law recognizes that general contractors and landowners may owe a duty in tort to employees of third parties. 
Fris v. Personal Products Co.
, 255 Ill. App. 3d 916, 924, 627 N.E.2d 1265 (1994); 
Haberer v. Village of Sauget
, 158 Ill. App. 3d 313, 318-19, 511 N.E.2d 805 (1987); 
Gentile v. Kehe
, 165 Ill. App. 3d 802, 805, 520 N.E.2d 827 (1987). The controlling issue is whether the landowner or general contractor has retained such control over the particular aspects of the plaintiff’s work so as to be reasonably held liable for injuries caused due to the failure to exercise that control with sufficient care. 
Sauget
, 158 Ill. App. 3d at 319.

In 
McConnell v. Freeman United Coal Co.
, 198 Ill. App. 3d 322, 555 N.E. 2d 993 (1990), for example, a plaintiff who was employed by a subcontractor to operate an earth mover brought a negligence claim against the general contractor of the project. The trial court found no duty between the general contractor and the plaintiff and entered summary judgment. On appeal, the appellate court reversed, noting that where the record indicated the existence of a factual issue as to whether the general contractor had retained so much control over the plaintiff’s activities as to expose the general contractor to potential liability, summary judgment was improper. 
McConnell
, 198 Ill. App. 3d at 328. The court stated the rule as follows:

“*** the courts of Illinois now recognize that an employee hired by an independent contractor to do construction work may obtain recovery for injuries sustained in the course of that work from the owner of the premises when the owner has retained the requisite control over the work and has failed to exercise that control properly.” 
McConnell
, 198 Ill. App. 3d at 326, citing Restatement (Second) of Torts §414 (1965). 

Because the evidence showed that defendant’s employees visited the site on a regular basis, directed plaintiff’s work there, tested the quality of plaintiff’s work and had the authority to stop work if necessary, the court determined that a factual issue existed as to whether the general contractor had undertaken such control over plaintiff’s activities as to subject him to liability. The case was remanded for trial.

Moreover, Sobczak points out that an exception to section 5(a) immunity exists if there is a significant legal relationship between the plaintiff and defendant separate and apart from the employer/employee relationship. See 
Reynolds v. Clarkson
, 263 Ill. App. 3d 432, 636 N.E.2d 91 (1994). In denying Flaska’s summary judgment motion, the trial court found that a factual question existed as to whether Flaska was acting in a “dual capacity” at the time of the accident -- both as an agent of Harbor Properties and as a landowner/general contractor --  so that section 5(a) immunity would not preclude recovery.

In 
Smith v. Metropolitan Sanitary District
, 77 Ill. 2d 313, 396 N.E.2d 524 (1979), our supreme court explained the dual capacity doctrine as follows:

 "[A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." citing 2A A. Larson, Workmen's Compensation sec. 72.80, at 14 -- 112 (1976); Kelly, Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine, 5 St. Mary's L.J. 818 (1974).

The decisive test in determining whether dual capacity exists is not how separate or different the second function of the employer is from the first, but rather, whether the second function generates “unrelated legal obligations” between the defendant and plaintiff. 
Smith
, 77 Ill. 2d at 319, citing 2A A. Larson, Workmen's Compensation sec. 72.80, at 14 -- 117 (1976). Thus, “[a] mere separate theory of liability against the same legal person as the employer is not a true basis for use of the dual capacity doctrine; the doctrine, instead, requires a distinct separate 
legal
 
persona
.” 
Smith
, 77 Ill. 2d at 319 (emphasis added), citing 2A A. Larson, Workmen's Compensation sec. 72.80 (Supp. 1979).

In arguing against application of the dual capacity doctrine, Flaska asserts that the evidence was uncontradicted that Sobczak was injured in preparing to level soil which, at least in part, had been delivered to the Flaska property by Harbor Properties. He testified that the dirt was there only because Harbor Properties, which had excavated the dirt from another site and considered the dirt to be a liability, agreed to deliver and level it in return for Flaska’s promise to use it as landfill. Flaska asserts, therefore, that Sobczak was injured only in connection with his employment for Harbor Properties and that he took on no additional legal “persona” in directing Sobczak’s work other than that as agent for Harbor Properties. 

In addition, while Flaska concedes that the determination of whether a defendant had charge of the work at a construction site has generally been held to be for the trier of fact (
McGovern v. Standish
, 65 Ill. 2d 54, 357 N.E.2d 1134 (1976); 
Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.
, 22 Ill. 2d 305, 175 N.E.2d 785 (1961)), he also notes that whether control has triggered potential liability may be decided as a matter of law where the evidence presented is insufficient to create a factual question. (
Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.
, 76 Ill. 2d 481, 394 N.E.2d 403 (1979); 
Fruzyna v. Walter C. Carlson Associates, Inc.
, 78 Ill. App. 3d 1050, 398 N.E.2d 60 (1979)). He emphasizes that the mere ownership of land is insufficient to impose liability. 
Gannon
, 22 Ill. 2d at 319-20.  

Our courts have identified a number of factors to be considered in determining whether the totality of the circumstances establishes that a party had charge of work at a construction site, including supervision and control of the work being performed, or retention of the right to supervise and control it; constant participation in ongoing activities at the construction site; supervision and coordination of the subcontractors; responsibility for safety precautions at the job site; authority to issue change orders; authority to stop the work; ownership of equipment used at the job site; familiarity with construction practices; and the ability to correct unsafe or improper work habits and equipment deficiencies. 
Lyle v. Sester
, 103 Ill. App. 3d 208, 430 N.E.2d 699 (1981); 
Hausam v. Victor Gruen & Associates
, 86 Ill. App. 3d 1145, 408 N.E.2d 1051 (1980); 
Bishop v. Crowther
, 92 Ill. App. 3d 1, 415 N.E.2d 599 (1980); 
Westerfield v. Arjack Co.
, 78 Ill. App. 3d 137, 397 N.E.2d 451 (1979). 

Here, as the trial court found in its pre-trial rulings, a factual question existed as to whether Flaska had personally undertaken so much personal control over Sobczak’s work at his residence as to subject Flaska to potential liability in negligence, either as an owner of the land on which the accident occurred, or as a general contractor for the work Sobczak did there. When reviewing the trial court’s determinations on such disputed questions of fact after trial, we utilize the 
Pedrick
 standard, 
i.e.,
 whether all the evidence, when considered in a light most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). 

Evidence at trial was that Flaska routinely used Harbor Properties’ workers at his home to do jobs unrelated to Harbor Properties’ business. With regard to renovations that were occurring on the property at the time of Sobczak’s injury, Flaska admitted that he personally took out a building permit from the local village for much of the work occurring on the property, including work done by Harbor Properties’ employees. He listed himself, and not Harbor Properties, as the general contractor for the renovations. Although Flaska insisted that Sobczak’s work was unrelated to the permit work, there was testimony indicating that the dirt generated by the permit work was comingled with the dirt delivered to the site by Harbor Properties. Moreover, Sobczak testified Flaska and other Harbor Properties’ employees routinely worked at the Flaska residence under Flaska’s personal supervision. On these occasions, Flaska either told Sobczak what to do and how to do it, or passed such information through others. 

Evidence at trial also showed that, unlike a typical homeowner, Flaska had extensive experience with heavy equipment like the bulldozer that injured Sobczak. On at least two prior occasions, Flaska observed earth movers roll from their upright positions, causing severe injury to their operators. Flaska had participated in the purchase of the bulldozer that injured Sobczak and, indeed, had directed Sobczak in its assembly. He was familiar with its proper operation. Flaska also testified that he was familiar with the roll-protection systems, consisting of a canopy and seat belt, which modern bulldozers have to protect the operator from roll-over injury. He admitted that he knew such systems were commercially available.

In light of the trial court’s finding of liability and the deferential  
Pedrick
 standard of review, we find the evidence supports the trial court’s determination that Flaska exercised sufficient personal supervision over Sobczak’s activities on the day of the injury so as to create a legal duty of care and subject Flaska to liability in negligence. We also find Flaska’s activities in supervising Harbor Properties workers at his home as a general contractor to have created a distinct “persona,” separate and apart from his role as an agent of Harbor Properties, that was sufficient for Sobczak to avoid a section 5(a) immunity defense pursuant to the dual capacity doctrine. In addition, we find the record sufficient to support a finding that Flaska knew that the vehicle at the time of the accident did not provide roll-over protection to its operator, knew that a roll-over was possible during the times the vehicle was being loaded and unloaded from its trailer, knew that vehicles with roll-over protection systems were commercially available, and knew that a roll-over accident without a protection system had the potential to severely injure Sobczak. Despite this knowledge, Flaska directed Sobczak, through others, to use this vehicle to do work on his property. In doing so, Flaska failed to both warn Sobczak of the dangers associated with unloading the bulldozer or provide Sobczak with appropriate equipment to do the job safely. Finally, we find the evidence sufficient to support the jury’s finding that the lack of either a warning or a roll-over protection system on the vehicle used by Sobczak was a proximate cause of Sobczak’s injuries. Accordingly, we find no error in the trial court’s denial of judgment 
non
 
obstante
 
veredicto
.

In addition to his immunity claim, Flaska argues that the trial court committed reversible error in failing to bar Gerald Whitehouse, one of Sobczak’s witnesses, from testifying at trial. Whitehouse was an engineer originally retained by another defendant, Case Corporation, the original manufacturer of the bulldozer. When Case was dismissed from the suit, Sobczak decided to use Whitehouse as one of his own expert witnesses. However, although Case disclosed in its pre-trial discovery that Whitehouse would testify, Sobczak failed to inform Flaska once Case was dismissed that he also planned to call Whitehouse. Sobczak concedes such a disclosure should have been made under the terms of Supreme Court Rule 213(g). 166 Ill. 2d R. 213(g).

When Flaska discovered that Sobczak planned on calling Whitehouse, he brought a motion 
in
 
limine
 to exclude him. Flaska argued that because Sobczak failed to answer the Supreme Court Rule 213(g) interrogatories, and because Whitehouse had not offered any opinion testimony against Flaska in prior depositions, it would be improper to allow Whitehouse to testify. The court denied the motion.

At trial, Whitehouse was questioned about federal safety standards governing material handling equipment such as the bulldozer that injured Sobczak. As part of this testimony, Whitehouse read to the jury federal regulations governing rollover protection structures. Specifically, Whitehouse read the Occupational Safety and Health Administration’s (OSHA) regulation section 1926.602 which requires that employers at construction sites fit all bulldozers with a rollover protective canopy and seat belt. A second provision, section 1926.1000, requires that older machines, such as the one that fell on top of Sobczak, be retrofitted with a canopy structure by the beginning of 1974. 

After referencing the OSHA regulations, Whitehouse was asked to assume that a worker was directed by a homeowner to unload a crawler from a trailer, and that the crawler did not have a canopy, and that the crawler slipped off the trailer during the unloading process. He was also asked to assume this occurred at a construction site which was a residence, that the homeowner was experienced in construction and was exercising a high degree of supervisory care, and was also acting as his own general contractor. Flaska promptly objected to the hypothetical, arguing that it was speculative and contradictory to the evidence. The trial court overruled the objection. Whitehouse then stated that, under such a hypothetical set of facts, it was his opinion that the homeowner would be required by OSHA to provide a crawler which included a safety canopy and belt. He also stated that such a canopy would prevent injury such as the loss of the operator’s leg following a roll because the safety belt would confine the operator inside the protective “envelope” created by the roll-over structure.

On appeal, Flaska argues that the trial court committed reversible error in allowing Whitehouse to testify, in allowing Whitehouse to introduce the OSHA provisions, as well as in allowing him to give his opinion as to OSHA’s applicability. Sobczak responds by arguing Whitehouse’s testimony was properly admitted and, in any event, Flaska suffered no significant prejudice from Whitehouse’s testimony.

Sobczak points to several factors which he claims support the trial court’s decision to admit Whitehouse’s testimony. First, Whitehouse had been deposed prior to trial, albeit by Case, in the presence of Flaska’s counsel. Flaska thus had the opportunity to question Whitehouse regarding his potential testimony. Second, Sobczak indicated in prior answers to Rule 213 interrogatories, although again interrogatories propounded by Case, that Whitehouse might be called to testify about the availability of roll-over guards and about whether a different outcome would have occurred if a guard had been installed on the vehicle. A copy of this answer had been sent to Flaska’s counsel. Third, Sobczak’s counsel admitted that he expected Whitehouse to be called to discuss the OSHA standards at trial, even though he had not received formal notice from Sobczak. In light of these factors, Sobczak argues that barring Whitehouse from testifying would have been unduly harsh.

The law with regard to claims of discovery violations made on appeal is well settled. The imposition of a sanction for a violation of discovery rules is a matter falling within the sound discretion of the trial court, whose decision will not be disturbed absent a clear showing of an abuse of that discretion. The purpose of discovery sanctions is not to punish, but rather, to insure fair discovery and a trial on the merits. 
Flanagan v. Redondo
, 231 Ill. App. 3d 956, 963, 595 N.E.2d 1077 (1991). Barring a witness' testimony is only one of many sanction available to the court. 
Kurrack
, 252 Ill. App. 3d at 903; see 
Sohaey v. Van Cura
, 158 Ill. 2d 375, 381, 634 N.E.2d 707 (1994). Each case presents a unique factual situation which is to be considered in determining whether a sanction is to be imposed. 
Boatmen's National Bank v. Martin
, 155 Ill. 2d 305, 314, 614 N.E.2d 1194 (1993). 

Factors the trial court must use in determining whether exclusion of a witness is an appropriate sanction are (1) surprise to the adverse party; (2) the prejudicial effect of the witness' testimony; (3) the nature of the witness' testimony; (4) the diligence of the adverse party; (5) whether objection to the witness' testimony was timely; and (6) the good faith of the party calling the witness. 
Boatmen's National Bank of Belleville
, 155 Ill. 2d at 314. Relevant considerations in assessing prejudice on appeal are the strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, the feasibility of continuance rather than a more drastic sanction, and the willfulness of the plaintiff  in failing to disclose the witness. 
People v. King
, 248 Ill. App. 3d 180, 186, 618 N.E.2d 1051 (1993).

After considering the issue, we find no error in the trial court’s decision not to strike Whitehouse’s testimony. First, as Sobczak claims, it is doubtful that Whitehouse’s testimony affected the ultimate outcome of the trial. A party is not entitled to a reversal based on ruling on evidence unless the error was substantially prejudicial and affected the outcome of trial. 
Jackson v. Pellerano
, 210 Ill. App. 3d 464, 471, 569 N.E.2d 167 (1991). The burden rests with the party seeking reversal to establish prejudice. 
Jackson
, 210 Ill. App. 3d at 471. 

Here, the OSHA sections, which had been brought to the attention of all of the defendants at a much earlier date in pre-

trial proceedings, were given to the jury to establish the standard of care pursuant to Illinois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1995), not because Whitehouse testified as to their existence. The jury would thus have been exposed to the OSHA provisions even if Whitehouse had not testified.

Second, another witness, Max North, who 
was
 identified in Sobczak’s pre-trial discovery responses, discussed the OSHA regulations in his deposition. Whitehouse’s testimony was used, in part, because of conflicts in scheduling North at trial. Thus, even if Whitehouse’s testimony had been struck, Sobczak may well have prevailed upon the trial court to allow similar testimony into evidence by re-scheduling North.

Third, Flaska’s claims that the hypothetical was speculative or against the evidence were properly rejected. In our view, the hypothetical was sufficiently close to the evidence  presented as to make the question relevant to the proceedings. This is because the regulations assist in establishing the relevant standard of care.

Lastly, Flaska argues that the OSHA regulations were inadmissible because they applied by their own terms only to “employers,” and  it was uncontroverted that Harbor Properties, and not Flaska, was Sobczak’s employer. We find this argument was properly rejected by the trial court, however, as a plaintiff is permitted to use OSHA regulations to establish the standard of care against a defendant in charge of the work, regardless of whether he is the employer or not. 
LePage v. Walsh Construction Co.
, 126 Ill. App. 3d 1075, 486 N.E.2d 509 (1984). 

Again, in light of the deference given to the trial court in determining such issues, we find no error in the trial court’s ruling. Moreover, even if we were to find error in this regard, we would not find it to be so egregious as to require reversal. It is well settled that the parties are entitled to a fair trial, not a perfect one. 
Duffy v. Midlothian Country Club
, 135 Ill. App. 3d 429, 481 N.E.2d 1037 (1985); 
Fedt v. Oak Lawn Lodge, Inc.
, 132 Ill. App. 3d 1061, 478 N.E.2d 469 (1985). What Whitehouse did in testifying with regard to the OSHA regulations was to set out the relevant safety standards, which the jury would have considered in any event. With regard to the hypothetical, the substance of Whitehouse’s opinion would have been argued in closing to the jury by Sobczak’s counsel, even if Whitehouse had not testified. Flaska’s contention that Whitehouse’s testimony was crucial to the judgment is belied both by the brevity of Sobczak’s direct examination and Flaska’s response to it in cross-examination.

Flaska next argues that the jury was improperly instructed regarding his duty to “retrofit” the used bulldozer with a roll-

protection system, both because there is no duty in Illinois to retrofit used equipment and because it was established that he had no legal authority to modify the bulldozer which he did not own. Our review of the record demonstrates, however, that the jury was not instructed regarding any such duty. Rather, Flaska’s legal duty was to provide Sobczak, who was alleged to be under his control, with a safe work place, a duty which necessarily includes protecting Sobczak from dangerous equipment. Sobczak argued that Flaska failed to provide equipment having a roll-protection system or safety belts, failed to provide a safe ramp and failed to warn Sobczak of the danger of a vehicle roll. Sobczak did not argue at trial that he was entitled to judgment because Sobczak failed to “retrofit” the bulldozer. Thus, product liability cases which deal with the sale of used equipment are immaterial. See 
e.g.
, 
 Peterson v. Lou Bachrodt Chevrolet Co.
, 61 Ill. 2d 17, 329 N.E.2d 785 (1975); 
Rahn v. Gerdts
, 119 Ill. App. 3d 781, 455 N.E.2d 807 (1983). 

Flaska also argues that he could not have a duty to warn Sobczak about a potential roll of the bulldozer because such a danger is open and obvious. The argument is apparently that the jury should not have been instructed on Flaska’s duty to warn Sobczak. However, the only objection made during the instruction conference regarding the warning issue was that there was no evidence presented that a roll-over was likely to occur. The alleged error is therefore waived. 
Burnham v. Lewis
, 217 Ill. App. 3d 752, 577 N.E.2d 922 (1991). 

In any event, evidence at trial was not that the bulldozer fell off the trailer because of its predictable tendency to respond to the force of gravity, but rather, that a sudden change in the slope of the trailer’s ramp created a place on the trailer bed where the rigid bulldozer necessarily balanced precariously, and that it was at this precise place on the trailer that one of the machine’s treads came into contact with mud which caused the vehicle to slide sideways. Evidence also was presented that the trailer was sitting on a slight incline at the time Sobczak was unloading it and that the ramp was slippery because both the trailer ramp and the bulldozer’s treads were  made of metal. 

All that is necessary for the giving of a jury instruction is that there be some evidence to support it. 
Yates v. Chicago National League Ball Club, Inc.
, 230 Ill. App. 3d 472, 487, 595 N.E.2d 570 (1992). Under such facts, the court could have concluded that Flaska owed Sobczak a duty to warn him regarding the safety of the trailer. Moreover, even if an instruction on the duty to warn had been given improperly, we would not reverse the verdict when there is sufficient evidence to support the verdict on Sobczak’s other theories of liability. Cf. 
Amp-Rite Electric Co. v. Wheaton Sanitary District
, 220 Ill. App. 3d 130, 156, 580 N.E.2d 622 (1991).

Flaska also argues that the jury was improperly instructed on federal OSHA safety standards in that OSHA expressly provides that it is not intended to enlarge a defendant’s common law duties. 29 U.S.C. § 653(b)(4) (1988). As Sobczak argues, however, the court gave the OSHA instruction not because OSHA created a novel legal duty, but rather, to establish the standard of care owed by anyone who takes charge of work at an Illinois construction site. The OSHA regulations thus merely served to inform the jury that vehicles such as the one Sobczak was operating are included in the class of vehicles for which roll-over accidents are a significant danger, and that this danger has been widely recognized many years before the occurrence. There was sufficient evidence to support use of the instruction for this purpose. See 
Villa v. Crown Cork & Seal Co.
, 202 Ill. App. 3d 1082, 1087, 560 N.E.2d 969 (1990)(court has discretion to determine which issues are sufficiently raised by the evidence to warrant jury instruction).

Flaska next argues that irrelevant and prejudicial evidence was improperly introduced against him and that the trial court committed error in failing to strike such evidence. First, he claims that the court improperly allowed Sobczak to introduce evidence of other roll-over accidents which Flaska had witnessed more than 20 years before Sobczak’s accident. Second, that a paramedic, Arthur Adams, who arrived at the scene shortly after the accident, was improperly allowed to give his opinion as to how Sobczak’s injuries were incurred, despite the fact that Adams did not witness the accident. In addition, Adams, who testified he had construction experience, was allowed to testify that he had witnessed two roll-over accidents involving crawler tractors on prior occasions. Third, that Sobczak was allowed to question both Flaska and Allen Ackre, a former employee of an equipment supply dealer, about the commercial availability of roll guards.

It is well settled that evidence is relevant under Illinois law when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. 
Lundquist v. Nickels
, 238 Ill. App. 3d 410, 427, 605 N.E.2d 1373 (1992). The trial court's determination with respect to the admissibility of evidence is a matter within its sound discretion and will be disturbed on appeal only where the court has manifestly abused its discretionary powers. 
Lundquist
, 238 Ill. App. 3d at 427. 

Here, the trial court weighed the arguments of the parties and held that the disputed evidence would be admitted. We do not believe the trial court's decision in this regard was "arbitrary, fanciful or unreasonable." See 
People v. Illgen
, 145 Ill. 2d 353, 364, 583 N.E.2d 515 (1991).

With regard to the admission of prior occurrences, the law is that evidence of prior similar occurrences may be admissible for any number of purposes; the determination of whether occurrences are sufficiently similar to the one at issue rests within the sound discretion of the trial court. 
Yassin v. Certified Grocers of Illinois, Inc.
, 150 Ill. App. 3d 1052, 1065, 502 N.E.2d 315 (1986). We note that the other incidents need only be substantially similar; they need not be identical. 
Rucker v. Norfolk & Western Ry. Co.
, 77 Ill. 2d 434, 441, 396 N.E.2d 534 (1979). At some point, the similarity of circumstances will go only to the weight of the evidence, rather than its admissibility. 
Yassin
, 150 Ill. App. 3d at 1065. Once again, in light of the deferential standard of review, we find no abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

AFFIRMED.

CAMPBELL, P.J., and QUINN, J., concurring.