

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-1999

# Elman v. USA

Precedential or Non-Precedential:

Docket 98-1186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Elman v. USA" (1999). *1999 Decisions.* Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 27, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1186

BARBARA ELMAN,
        Appellant

v.

UNITED STATES OF AMERICA;
UNITED STATES OF AMERICA, DEPARTMENT OF
THE INTERIOR; NATIONAL PARK SERVICES;
COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF
TRANSPORTATION, OFFICE OF THE ATTORNEY
GENERAL; COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF GENERAL SERVICES, OFFICE OF
THE ATTORNEY GENERAL; CITY OF PHILADELPHIA;
JOHN DOE; MARY DOE; ABC PARTNERSHIPS;
XYZ CORPORATIONS

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 97-cv-05825)
District Judge: Honorable Clifford Scott Green

Argued: December 17, 1998

Before: SLOVITER and COWEN, Circuit Judges,
and RODRIGUEZ,* District Judge

(Filed April 27, 1999)

_____

*Hon. Joseph H. Rodriguez, United States District Judge for the District
of New Jersey, sitting by designation.

Bruce M. Ginsburg, Esq.
Gregory C. DiCarlo, Esq (Argued).
Ginsburg & Associates
Philadelphia, PA 19103

 Attorneys for Appellant

Michael R. Stiles, Esq.
 United States Attorney
 Eastern District of Pennsylvania
James G. Sheehan, Esq.

 Assistant United States Attorney
 Chief, Civil Division
Scott A. Coffina, Esq. (Argued)
 Assistant United States Attorney
United States Attorney's Office
Philadelphia, PA 19106

 Attorneys for Appellees United
 States of America, United States
 Department of the Interior, and
 National Park Service

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Barbara Elman, a federal employee, appeals from the decision of the District Court granting summary judgment to the United States on her claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. SS 1346(b), 2671-2680. This appeal requires us to consider whether a federal employee who has received compensation under the Federal Employees' Compensation Act (FECA), 5 U.S.C. S 8101 et seq., for an injury sustained during the course of employment may sue the United States under the FTCA, alleging that the United States' role in causing the injury was significantly different from its role as an employer.

2

I.

FACTUAL AND PROCEDURAL HISTORY

The facts in this case are not in dispute. Elman is an
employee at the Philadelphia office of the Equal
Employment Opportunity Commission (EEOC). On
November 20, 1996, she and a co-worker left the EEOC
offices to attend a federal employees' health benefits fair
being held at the Federal Building nearby. While walking
along the south side of Market Street between 5th and 6th
Streets, Elman fell, fracturing her left knee and injuring her
face. Elman claims that her fall was caused by a defect in
the sidewalk, which is owned by the Commonwealth of
Pennsylvania but maintained by the National Park Service.

Elman required the insertion of three bone screws and
has incurred pain and suffering. Because of her injuries,
Elman applied for workers' compensation benefits under
FECA on December 3, 1996. Her application was approved
on January 8, 1997, and as of August 25, 1997, Elman had
received $20,299 in FECA benefits.

Elman also sought to receive compensation for her
injuries from the National Park Service. On July 3, 1997,
she filed an administrative claim with the Park Service,
which it denied on August 18, 1997. Elman then filed suit
against, inter alia, the United States in the District Court
for the Eastern District of Pennsylvania, seeking
compensation under the FTCA. The government moved for
summary judgment on the ground that recovery under
FECA disqualified Elman from recovering under the FTCA.
The District Court granted that motion by Order dated
February 27, 1988, and Elman filed a timely appeal.

We have jurisdiction under 28 U.S.C. S 1291. Our review
of a grant of summary judgment is plenary. We apply "the
same test the district court should have utilized initially,"
viewing those inferences that may be drawn from the
underlying facts in a light most favorable to the nonmoving
party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573
(3d Cir. 1976).

II.

DISCUSSION

An employee of the federal government is entitled to be compensated for "personal injury sustained while in the performance of his duty" under 5 U.S.C. S 8102(a) and to receive medical treatment under 5 U.S.C. S 8103. Section 8116 of the same title explicitly provides that the liability incurred under these provisions, with one exception not pertinent to this appeal, is exclusive. It states:

> The liability of the United States or an instrumentality thereof under this subchapter . . . with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee. . . because of the injury or death in a direct judicial proceeding . . . or by an administrative or judicial proceeding under .. . a Federal tort liability statute. . . .

5 U.S.C. S 8116(c) (emphasis added).

The decision to award FECA benefits is entrusted to the Secretary of Labor or his or her designee, whose decision is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. S 8128(b).

The Supreme Court explained Congress's purpose in enacting S 8116(c) in Lockheed Aircraft Corp. v. United States, 460 U.S. 190 (1983):

> [FECA] was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise -- the "quid pro quo" -- commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

4

Id. at 193-94.

Section 8116(c) thus bars an employee who has collected benefits under FECA from subsequently bringing suit against his or her employer for damages under the FTCA. As this court said in DiPippa v. United States, 687 F.2d 14, 17 (3d Cir. 1982), "Where FECA applies, it unambiguously precludes `all other liability of the United States' either `under a workmen's compensation statute or under a Federal tort liability statute.' "

Elman relies on a decision of the Court of Appeals for the Sixth Circuit, which in Wright v. United States, 717 F.2d 254, 259 (6th Cir. 1983), recognized an exception to this general rule, widely known as the "dual capacity doctrine." The dual capacity doctrine treats the government as though it were a third party, and therefore subject to suit despite the exclusivity provision of FECA, when the government's role in contributing to the employee's injury is entirely different from its role in employing that individual. As the Sixth Circuit articulated the test, " `An employer may become a third person, vulnerable to tort suit by an employee, if--and only if--he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.' " Id. at 259 (quoting 2A Larson, Workmen's Compensation Law 14-229, S 72.81 (1982)).

Elman urges this court to adopt the dual capacity doctrine and to find that the government was acting in one persona when it maintained the sidewalk and an entirely different one when it employed Elman. We note that some of the state courts, interpreting their own state workers' compensation statutes, have also adopted versions of the dual capacity doctrine. See, e.g., Tatrai v. Presbyterian Univ. Hosp., 439 A.2d 1162, 1166 (Pa. 1982) (Roberts, J., concurring, joined by O'Brien, C.J., and Larsen and Flaherty, J.J.); Sobczak v. Flaska, 706 N.E.2d 990, 997 (Ill. Ct. App. 1998); McGee v. Goodyear Atomic Corp., 659 N.E.2d 317, 323-24 (Ohio Ct. App. 1995); Panagos v. North Detroit Gen. Hosp., 192 N.W.2d 542, 558-59 (Mich. Ct. App. 1971).

5

We have expressed doubts about the wisdom and viability of the dual capacity doctrine in the past. In Schmid v. United States, 826 F.2d 227 (3d Cir. 1987), a government employee who had been injured while participating in a softball game sponsored by his employer alleged that his injury was caused by the government's negligent maintenance of its property. Schmid sought to recover under the FTCA, even though his FECA claim had already been approved by the relevant agency. Having been asked to adopt the dual capacity doctrine, we expressed "concern[ ] that the question at the center of th[at] doctrine --whether at the time of injury the employer was acting as a third party vis-a-vis the employee--is virtually identical to the question the agency must ask in determining whether the employee is eligible for FECA benefits--i.e. whether or not the injury was sustained `in the performance of his duty.' " Id. at 229. We noted that "a court applying the [dual capacity] doctrine may come perilously close to second guessing the agency's decision about whether the employee is entitled to FECA benefits, something that [the statute] explicitly states the courts must not do." Id.

We did not, however, reject the dual capacity doctrine in that case. Instead, we held that the doctrine would not apply to Schmid's claim in any event. We noted that Schmid's employer not only owned the land on which Schmid was injured, but sponsored the softball game and encouraged its employees to participate in such sports activities. Although some non-employees were permitted to play on the softball teams, we concluded that such participation was limited. In these circumstances, we viewed the government's role in maintaining the land as insufficiently removed from its role as employer to justify imposing FTCA liability.

A majority of the courts of appeals that have considered similar claims have refused to adopt the dual capacity doctrine. See Votteler v. United States, 904 F.2d 128, 130-31 (2d Cir. 1990) ("The `dual capacity doctrine' is inconsistent with the rationale of our decision in Balancio [v. United States, 267 F.2d 135 (2d Cir. 1959)], and we reject it."); Bush v. Eagle-Pitcher Indus., Inc., 927 F.2d 445, 452 (9th Cir. 1991) ("As a result of a short-lived loophole in

6

the [Longshore and Harbor Workers' Compensation Act], a private shipyard could be subjected to a dual capacity suit. The United States, though, by virtue of FECA section 8116(c) cannot and never could."); Wilder v. United States, 873 F.2d 285, 289 (11th Cir. 1989) (noting that the dual capacity doctrine "has been persuasively criticized" and "adopt[ing] those criticisms in declining to apply the doctrine"); cf. Vilanova v. United States, 851 F.2d 1, 6-7 (1st Cir. 1988) (rejecting the dual capacity doctrine in the context of a claim under the Nonappropriated Fund Instrumentalities Act).

Indeed, Elman has not identified any case in which a federal court permitted an individual to sue under the FTCA after having received benefits under FECA. The Sixth Circuit's decision in Wright is not such a case. There, the plaintiff, Sharon Wright, suffered a ruptured tubal pregnancy while performing her duties as a secretary at the Veterans Administration Hospital. She was treated at the hospital, and, according to her allegations, further injured by the medical malpractice of the hospital personnel. Wright did not file a FECA claim within the three-year statute of limitations, but did sue the United States under the FTCA. The Sixth Circuit rejected any suggestion that Wright's injuries were covered by FECA before it held that the dual capacity doctrine would allow Wright to recover under both FECA and the FTCA in any event. See 717 F.2d at 258-59. Thus, whatever its language, in fact the court did not allow Wright to recover under both FECA and the FTCA.1

The Sixth Circuit itself has apparently moved away from the dual capacity doctrine in subsequent cases. In McCall v. United States, 901 F.2d 548, 550-51 (6th Cir. 1990), it refused to allow dual recovery where the plaintiff, who was injured while on the job in one location, allegedly suffered

_____

1. In Miller v. Bolger, 802 F.2d 660, 663-66 (3d Cir. 1986), we permitted a plaintiff to proceed under Title VII after receiving FECA benefits, because we concluded that recovery under Title VII did not constitute "damages . . . for injury" within the meaning of FECA. We specifically noted that the same cannot be said of recovery under the FTCA. See id. at 663.

7

further injury when treated for that injury at a government hospital in another location. And, as recently as 1997, that court stated in a footnote, "The dual-capacity doctrine appears merely to represent a rewording of the standard inquiry under FECA of whether an employee suffered his injuries `while in the performance of his duty.' " Saltsman v. United States, 104 F.3d 787, 791 n.7 (6th Cir. 1997). Without considering whether this statement is an accurate reflection of the court's intent in Wright, the Saltsman footnote suggests that the Sixth Circuit may have become disenchanted with the dual capacity doctrine.

With this background in mind, we first consider whether Elman's claim would fit within the dual capacity doctrine before we consider whether to adopt that doctrine as law.

A.

Elman contends that there were two relationships between her and the government at the moment of her fall. First, she claims, there was an employer-employee relationship between her and the EEOC, pursuant to which she agreed to perform certain duties in return for payment. Second, she claims, there was a landowner-invitee relationship between her and the Park Service, in which the Park Service extended an invitation to the public to come upon particular land and assumed a limited obligation to assure the public's safety thereon. Elman acknowledges that receipt of FECA benefits prevents her from recovering from the government in tort for actions taken in its role as her employer. She contends, however, that there is no bar to her recovering in tort for actions the government took or failed to take as a landowner.

The District Court concluded that the dual capacity doctrine would not apply to these facts because "Plaintiff's injuries were sustained in the course of activity sufficiently related to her employment that the government's role as sponsor of the fair and manager of the property was related to its role as employer." Elman v. United States, Civ. Action No. 97-5825, slip. op. at 5 (E.D. Pa. February 27, 1998).

We disagree. To the extent that the government ever acts in more than one capacity, it was doing so here. The Park

8

Service's role in maintaining the Market Street sidewalk is not related to the EEOC's role as an employer. Unlike in Schmid, the government here did not restrict use of the property to EEOC employees in particular, or to federal employees more generally. Rather, it held the property open to all members of the general public.

Nor was the EEOC's role as sponsor of the benefits fair directly responsible for Elman's use of the sidewalk. The EEOC allowed its employees to walk to the fair, but there is no evidence that it encouraged them to do so or that it encouraged them to use the Market Street sidewalk in the process. Moreover, the government's motivation in maintaining public land, such as the Market Street sidewalk, is unrelated to its interests in preventing employment discrimination, one of the principal functions of the EEOC. Thus, we conclude that the dual capacity doctrine would apply to Elman's claims were we to adopt it.

B.

We thus must consider whether that doctrine accurately reflects applicable law.

Elman has not identified any language in the FECA statute that supports the rule she advocates. Indeed, the dual capacity doctrine is inconsistent with the language of that statute. Section 8116 provides that FECA liability on the part of the United States or an instrumentality thereof is "instead of all other liability of the United States or the instrumentality to the employee . . . because of the injury or death." 5 U.S.C. S 8116(c). In other words, FECA recovery bars liability that is (1) "of the United States or the instrumentality"; (2) "to the employee"; and (3) "because of the injury [compensable under FECA]." Id. The liability Elman seeks to impose on the United States with this suit meets these three criteria and should be barred under the plain language of the statute. Nonetheless, Elman would have us carve out an additional exception for liability that arises out of the United States' role in a persona other than an employer. As a court of limited powers, we see no justification for doing so.

9

Elman attempts to offer us a justification by appealing to this court's sense of public policy. She correctly notes that tort law holds the Park Service responsible for certain injuries incurred while the plaintiff was on Park Service land in an effort to deter the Park Service from permitting dangerous conditions to remain on that land. Elman contends that the need for such deterrence is not reduced by the fact that the injured party was a federal employee. And, she concludes that, therefore, the Park Service's liability should not be reduced by that fact.

Although we recognize the force of some of Elman's observations, we decline to adopt her conclusion because it ignores the fact that workers' compensation laws represent a balance. The injured workers have assurance they will be compensated quickly, efficiently, and without extended litigation in return for limited recovery exclusive to that claim. The reduction in liability is based solely on the injured party's status as an employee, not on any lessening of the need for deterrence. FECA likewise sacrifices some deterrence in order to assure that federal employees "receive immediate, fixed benefits, regardless of fault and without need for litigation." Lockheed Aircraft Corp., 460 U.S. at 194. Thus, were we to adopt the dual capacity doctrine Elman advocates, we would undermine the workers' compensation rationale embodied in FECA. That is a decision that must be made by Congress.

As the Second Circuit stated in Votteler, "Sometimes the broad coverage of a compensation scheme confers a `benefit' that a plaintiff would rather forgo in preference to the traditional tort remedies, but the breadth of coverage, with its consequent exclusivity, must be upheld, even when it might not be advantageous to the employee." 904 F.2d at 130. This logic is particularly applicable here where the employee, having already accepted the benefit of the workers' compensation scheme, now seeks a fuller recovery under tort law.

Finally, we address Elman's remaining argument, viz., that our construction of the relevant federal statutes should be informed by principles of state law, in this case Pennsylvania law. Elman notes (1) that the federal government is subject to suit under the FTCA "in the same

10

manner and to the same extent as a private individual under like circumstances," 28 U.S.C. S 2674, and (2) that the extent to which a private employer would be subject to suit under similar circumstances would depend on Pennsylvania's willingness to accept the dual capacity doctrine. She concludes that this court should therefore look to that doctrine as it exists under Pennsylvania law to determine the extent of the government's liability.

We disagree. It is FECA, specifically S 8116(c), not the FTCA which bars Elman from bringing suit. Even if Elman is right that the extent of government liability under the FTCA should be determined by reference to Pennsylvania law and that such FTCA liability would exist here, FECA excuses the government from that FTCA liability in any event.

III.

CONCLUSION

For the reasons set forth, we will affirm the order of the District Court granting Appellees summary judgment on Elman's FTCA claims.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11